**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 24.218.179.49,<br><br>Defendant. | Civil Action No. 1:25-cv-11937-JCB |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum of Points and Authorities in support of its Motion for Leave to serve a third-party subpoena prior to a Rule 26(f) conference.

## I. INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites. Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Declaration of Jorge Arco, attached hereto as Exhibit "A."

Strike 3, using its proprietary forensic software, VXN Scan and the Cross Reference Tool, monitored and detected the infringement. *See id.* at ¶ 47. This software recorded Defendant's IP address illegally distributing Strike 3's motion pictures. *See* Declaration of Patrick Paige, attached hereto as Exhibit "B". This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the information necessary to

identify Defendant by correlating the IP address with John Doe's identity. *Id.* at ¶ 28. As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP, Comcast Cable Communications, LLC (Comcast Cable), so that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service. Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.[1]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II. FACTS

### A. Plaintiff Has a Serious Problem with BitTorrent Infringement

Strike 3 holds title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *MILFY*, *Slayed*, *Tushy*, *Tushy Raw*, *Vixen*, and *Wifey* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. Decl. Arco at ¶ 14. Strike 3 is owned entirely by General Media Systems ("GMS") and has existed since 2015. *Id.* at ¶ 9.

Although it started out small, the Brands' websites now host approximately 15 million visitors each month. *Id.* at ¶ 15. This success is no fluke. Strike 3's philosophy has always been

[1] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 17–18. Moreover, Strike 3's motion pictures are known for having some of the highest production budgets of any in the adult industry. *Id.* at ¶ 20.

Because of this commitment to quality, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world. *Id.* at ¶ 21. Strike 3 is also frequently the number one seller of adult DVDs in the United States. *Id.* at ¶ 22. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 23. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 24.

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3, and Strike 3 "can compete in the industry, but [it] cannot compete when [its] content is stolen." *Id.* at ¶ 27. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id.* at ¶ 40.

B. Plaintiff Brings Its Litigation in Good Faith

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices that people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. *Id.* at ¶ 34. Therefore, Strike 3 only files strong cases against extreme infringers. *Id.* at ¶ 35. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content. *Id.* Strike 3 does not seek settlements

unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 36. Additionally, Strike 3 does not send demand letters. *Id.* Finally, although certainly Strike 3 does not believe anyone should be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding the content they choose to enjoy. Accordingly, Strike 3 has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of a case; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity. Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs and licenses. *Id.* at ¶ 38. Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and direct those who infringe content to the avenue of legitimately acquiring access to Strike 3's works. *Id.*

## III. ARGUMENT

### A. Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant

"Although the First Circuit has not addressed the proper standard for determining [when] expedited discovery [is warranted], judges of this Court have allowed it in cases where plaintiffs seek to identify unknown defendants." *Breaking Glass Pictures v. Swarm Sharing Hash File SHA1: £973F491D02C1E0220DBC534D8F8EDC15FC53FAEF*, No. 13-10735 (PBS), 2013 WL 2407226, at *3 (D. Mass. May 1, 2013) (collecting cases). "In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the only potential

avenue for discovery is [a court order under] Rule 26(d)(1).'"[2] *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020) (citation omitted)).

"Issuing subpoenas to reveal the identity of the individual behind an IP address is prevalent in litigation surrounding copyright infringement as a result of illegally downloaded media." *Viken Detection Corp. v. Doe*, No. 19-12034 (NMG), 2019 WL 5268725, at *1 (D. Mass. Oct. 17, 2019). Accordingly, courts often apply the analysis outlined in *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) to determine whether to authorize early discovery, which weighs:

> (1) a concrete showing of a prima facie claim of actionable harm, (2) specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) a central need for the subpoenaed information to advance the claim, and (5) the party's expectation of privacy.

*London-Sire Recs., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 164 (D. Mass. 2008); *Viken Detection Corp.*, No. 19-12034 (NMG), 2019 WL 5268725 at *1–2. "Because good cause supports the plaintiff's request, at least insofar as it seeks the relevant subscriber's name and address, it should be allowed." *Breaking Glass Pictures*, No. 13-10735 (PBS), 2013 WL 2407226 at *3.

---

[2] As noted in Court of Appeals for the District of Columbia, the Federal Rules were amended in 2015 to remove the "good cause" standard "and replaced it with the overarching relevance and proportionality standard . . . ." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 n.2 (D.C. Cir. 2020). Nevertheless, courts "have continued to look to the good cause factors in analyzing motions for expedited discovery." *See Strike 3 Holdings, LLC v. Doe*, No. 20-5123 (KSM), 2020 WL 6342770, at *1 (E.D. Pa. Oct. 29, 2020); *see also Higgins v. Huhtamaki, Inc.*, No. 21-00369 (NT), 2022 WL 523344, at *1 n.3 (D. Me. Feb. 21, 2022) ("Even though the current version of rules 'does not say so, it is implicit that some showing of good cause should be made to justify' an order permitting early discovery.") (citation omitted); *McMann v. Doe*, 460 F. Supp. 2d 259, 265 (D. Mass. 2006). Strike 3 presents good cause standard outlined in *Sony* here because several of those factors address the relevance and proportionality of Plaintiff's request, and thus discovery is appropriate under either standard.

B. There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena

*1. Plaintiff's Complaint Makes a Prima Facie Claim for Direct Copyright Infringement*

To make a prima facie claim for copyright infringement,[3] Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 52–54.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office. *See* 17 U.S.C. § 410(c); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com*, LLC, 139 S. Ct. 881, 888, 203 L. Ed. 2d 147 (2019); *see also* Complaint at ¶¶ 46, 49. Plaintiff's prima facie allegations of infringement are attested to by Mr. Arco, who used Plaintiff's forensic software to track and record BitTorrent activity. *See* Decl. Arco. Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted Works. *See* Declaration of Susan B. Stalzer, Exhibit "C." Thus, "[t]hrough [its] investigator, [Strike 3 has] produced evidence that the files were, in fact, available for download." *London-Sire Recs.*, 542 F. Supp. 2d at 169.

Plaintiff has also made a plausible prima facie showing of "copying." The word "copying is a shorthand reference to the act of infringing any of the copyright owner's exclusive rights set

[3] The Court in London Sires noted that this factor contains three parts: (1) a plaintiff must show an "actionable harm," here copyright infringement; (2) prima facie evidence in support of the claim; and (3) and that "both the claim and the prima facie evidence supporting it must be "'concrete.'" *London-Sire Recs., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 164 (D. Mass. 2008).

forth at 17 U.S.C. § 106." *Crosby Legacy Co., LLC v. TechnipFMC PLC*, No. 18-10814 (MLW), 2021 WL 4452867, at *25 (D. Mass. Sept. 29, 2021) (citation omitted). Plaintiff's Complaint alleges that Doe Defendant not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 47. Strike 3 "need not actually prove their case at this stage; [it] need only present evidence adequate to allow a reasonable fact-finder to find that each element of their claim is supported. [It] ha[s] done so." *London-Sire Recs.*, 542 F. Supp. 2d at 175 (citation omitted).

*2. Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant*

"Strike 3 seeks only the name and address of the subscriber associated with the defendant's IP address, which is a limited and highly specific set of facts." *Strike 3 Holdings, LLC v. Doe*, No. 18-5586 (LAK)(KNF), 2018 WL 5818100, at *1 (S.D.N.Y. Oct. 15, 2018). The subscriber's identity and address have been described by courts as "highly specific," *Malibu Media, LLC v. Doe*, No. 14-4808 (JS)(SIL), 2016 WL 4574677, at *6 (E.D.N.Y. Sept. 1, 2016) (collecting cases), and "[t]he subpoenaed information is only needed to advance Plaintiff *to* the service of process stage, and is sufficiently specific to accomplish that end." *Strike 3 Holdings, LLC v. Doe*, No. 19-5818 (AT)(JLC), 2019 WL 5459693, at *3 (S.D.N.Y. Oct. 9, 2019) (citation omitted) (emphasis original); *see also Breaking Glass Pictures*, No. 13-10735 (PBS), 2013 WL 2407226 at *4..

*3. There Are No "Alternative Means" to Uncover Doe Defendant's True Identity*

Plaintiff has only a limited view into Defendant's true identity, only having access to the offending IP address. Indeed "BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address." *Strike 3 Holdings, LLC v. Doe*, No. 21-10092

(AJN)(KHP), 2021 WL 5810934, at *2 (S.D.N.Y. Dec. 6, 2021) (citation omitted). "At this time, Plaintiff is only able to identify John Doe with reference to his or her IP address. Once supplied with the date and time of the alleged infringement, ISPs are able to use their subscriber logs to identify the particular individual associated with the IP address." *Strike 3 Holdings, LLC v. Doe*, 329 F.R.D. 518, 520 (S.D.N.Y. 2019) (citation omitted). "Only the ISP has any record of which IP addresses were assigned to which users." *London-Sire Recs.*, 542 F. Supp. 2d at 179; *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) ("[O]nly the ISP can match the IP address to the subscriber's identity."). "Here, there is good cause for expedited discovery because the Plaintiff has no other means of determining the identity of its defendants." *Patrick Collins, Inc. v. Does 1-79*, 286 F.R.D. 160, 163 (D. Mass. 2012).

*4. The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim*

"[T]here is good cause for early discovery because the plaintiff has no other means of identifying the proper defendant." *Breaking Glass Pictures*, No. 13-10735 (PBS), 2013 WL 2407226 at *4. "[I]t is evident that the plaintiffs need the information in order to further the litigation. Without names and addresses, the plaintiffs cannot serve process, and the litigation can never progress." *London-Sire Recs.*, 542 F. Supp. 2d at 179.

*5. Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers*

Lastly, Defendant's "expectation of privacy for sharing copyrighted [material] through an online file-sharing network as simply insufficient to permit him to avoid having to defend against a claim of copyright infringement." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 124 (2d Cir. 2010). "[T]he alleged infringers have only a thin First Amendment protection." *London-Sire Recs.*, 542 F. Supp. 2d at 179. "Moreover, many internet service providers require their users to

acknowledge as a condition of service that they are forbidden from infringing copyright owners' rights, and that the ISP may be required to disclose their identity in litigation." *See id.; see also United States v. Morel*, 922 F.3d 1, 9 (1st Cir. 2019) ("[A party does] not have a reasonable expectation of privacy in the IP address information[.]"). Accordingly, all factors weigh in favor of good cause, and the Court should grant leave for limited, early discovery.

C. Protective Order

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed pseudonymously. *See e.g.*, *Viken Detection Corp.*, No. 19-12034 (NMG), 2019 WL 5268725 at *2 (collecting cases). Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Dated: 07/18/2025

Respectfully submitted,

By: /s/ *Jacqueline M. James*

Jacqueline M. James, Esq. (BBO #706668)
The James Law Firm, PLLC
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
T: 914-358-6423
F: 914-358-6424
E-mail: jjames@jacquelinejameslaw.com
*Attorneys for Plaintiff*